GEORGE RUSK, PLAINTIFF-RESPONDENT, v. MILDRED L. JEFFRIES AND WALTER JEFRIES, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS.

Submitted October 28, 1932—Decided January 31, 1933.

For the defendants-appellants, *Thompson & Hanstein*.

For the plaintiff-respondent, *John Rauffenbart*.

The opinion of the court was delivered by

WELLS, J. This is an appeal by the defendants from a judgment in favor of the plaintiff, entered upon the verdict of a jury, in the Atlantic County Circuit Court.

The plaintiff was a policeman of the city of Ventnor City.

On December 22d, 1930, about nine-thirty P. M., while on duty, he was walking easterly along Ventnor avenue and while crossing Troy avenue, at the intersection of Ventnor avenue, a collision occurred between plaintiff and an automobile operated by the defendant Mildred L. Jeffries, the daughter of the defendant Walter Jeffries. As a result of the accident, plaintiff suffered injuries disabling him from performing, in the future, his duties as a policeman.

Defendant Walter Jeffries was sued as the owner of the car, and Mildred L. Jeffries was sued as his agent in the operation of the car.

The defense was that the accident was caused solely by the negligence of the plaintiff and the plaintiff's negligence contributed to the accident.

Appellants allege three grounds of appeal.

The first: "Because the court refused to admit testimony on behalf of the defendants to show that the plaintiff had been pensioned as a police officer of Ventnor City, and as such is receiving from the pension fund of the police and fire departments of Ventnor City a certain sum per month, it having been admitted by the plaintiff that the Pension act had been adopted by the city of Ventnor City, to which an exception was duly taken."

The appellants contend that the pension was a part of the compensation received by the plaintiff for his services as a police officer; that the money was no gratuity paid to him by the city, but a binding obligation of the city; that it was not in the nature of insurance, the premium of which plaintiff had paid, but was payable to him by law from the city. In other words, that plaintiff's salary consisted not only of a stipulated sum which he was to receive while in service, but also of a further sum which he was to receive after retirement, and that consequently, inasmuch as the plaintiff

proved as a measure of his damages his salary and the loss thereof, the defendants should have been permitted to show that the plaintiff had in fact not lost the full amount of salary but only such part thereof as was in excess of the pension received by him.

In support of that contention the appellants cite *Hayes* v. *Hoboken*, 93 *N. J. L.* 432, in which Mr. Justice Black, speaking for this court, said: "The moneys paid for pensions are a part of the compensation to be paid for the services rendered by members of the force and are an inducing cause to their enlistments;" and also a New York decision (*Drinkwater* v. *Dinsmore*, 80 *N. Y.* 390), wherein the plaintiff, having been injured and unable to work was nevertheless paid his wages continuously by his employer, the holding of the New York court being that the defendant had the right to show that the plaintiff had lost no wages or that the wages were not as much as he had claimed, and that the defendant had the right "to show, if he could, that for some particular reason the plaintiff would not have earned any wages if he had not been injured, or that he was under such a contract with his employer that his wages went on without services, or that his employer paid his wages from mere benevolence."

Attorney of respondent cites on his brief numerous decisions from the New York courts. We think the case of *Geary* v. *Metropolitan Street Railway Co.*, 73 *App. Div.* 441; 77 *N. Y. Supp.* 54, is more applicable to the case now under consideration, where it was said:

"It is further contended that there are prejudicial errors in the reception of evidence and in the instructions to the jury upon the question of damages. The decedent was earning a salary of $1,400 per annum. It appeared that under the pension provisions of the Greater City Charter, the decedent's widow was receiving $700 per annum. The court instructed the jury that in assessing the damages they should not take into consideration this pension which the widow was receiving, and the defendant excepted. We think the instruction was proper. The duty of the jury, under the statute, was to

ascertain the pecuniary loss to the widow and children sustained by the death of the husband and father, and any benefits which they received by way of *insurance* or *pension* are not to be offset or deducted."

The Pension act (*Pamph. L.* 1911, *ch.* 72, *p.* 104) and supplements thereto and amendments thereof, provide that any member of the police or fire department, who shall have received permanent disability in the performance of his duty, shall, upon a proper certificate to that effect, be retired upon a pension equal to one-half of his salary at the time of his retirement.

A reading of the provisions of this act indicates that the pension so paid was in the nature of insurance or indemnity.

The Pension act, as amended by the laws of 1927, chapter 120, page 226, and the laws of 1928, chapter 185, page 352, provides the method by which the fund out of which the pensions to the police and firemen of municipalities, adopting the act, are to be raised. The fund is made up by the deduction from every payment of salary to such member of the police and fire departments in such municipality of two per cent. of the amount thereof.

The municipality is to raise by taxation and pay into said fund yearly, an amount equal to four per cent. of the total salaries paid to the members of the police and fire departments; there shall also be added to such fund, all fines imposed upon any member of the police and fire department; all moneys given or donated to such funds; all moneys deducted from the salary of the police and fire department on account of absence or loss of time; and one-half of all rewards paid for any purpose, and in addition thereto, one-half of the two per cent. tax paid to the commissioner of banking and insurance.

The trial court in refusing to accept testimony as to the amount of pension received by the plaintiff based his ruling upon the reasoning of the court in the cases of *Cornish* v. *North Jersey Street Railway Co.,* 73 *N. J. L.* 273, and *Weber* v. *The Morris and Essex Railroad Co.,* 36 *Id.* 213.

In *Cornish* v. *New Jersey Street Railway Co., supra,* Mr. Justice Garrison, speaking for the Supreme Court, said:

"The fund out of which such payments were made was created in part by the plaintiff's contributions made under a contract with strangers to the defendant, and the tort feasor was no more entitled to be credited with the sums repaid to the plaintiff under such contracts than it would be to his withdrawal of his accumulations in a savings bank."

And continues:

"The principle is settled for this court by the opinion in *Weber* v. *Morris and Essex Railroad Co.,* 36 *N. J. L.* 213, where Chief Justice Beasley says: 'A person committing a tort cannot set up in mitigation of damages that somebody else, with whom he has no connection, has either in whole or in part indemnified the party injured.'"

It seems to us that notwithstanding the statement made by Mr. Justice Black in *Hayes* v. *Hoboken, supra,* "that the moneys paid for pensions are a part of the compensation to be paid for services rendered by members of the force," nevertheless the pension has the aspects of an enforced insurance, the money coming from various sources outside of either contribution by the police officer or the municipality which employs him.

The general and more reasonable rule is that the amount so paid, regardless of whether paid pursuant to *contract* or as a *gratuity,* cannot operate to reduce the damages recoverable against a tort feasor. 8 *R. C. L.* 556, and the cases therein cited.

This leads us to the conclusion that the first point should be decided adversely to the appellant.

The second ground of appeal is because the court refused to nonsuit the plaintiff.

There was testimony produced by the plaintiff tending to show that the plaintiff was walking eastwardly on Ventnor avenue on the southerly side thereof, and when he arrived at the intersection with Troy avenue, at the crosswalk, he made observations, the night being bad because of rain and snow and a strong wind coming from the east, by looking directly

in front, eastwardly on Ventnor avenue, to the north and to the south on Troy avenue, and back over his shoulder on Ventnor avenue, to ascertain if any vehicles were approaching. Seeing his way clear, he started straight across Troy avenue on the crosswalk and had proceeded for a distance of about eight feet when the automobile of defendant, coming eastwardly on Ventnor avenue, at a very fast rate of speed and without warning, turned to the right off of Ventnor avenue into Troy avenue and hit the plaintiff on his left side throwing him into the street.

There was an arc light on the southeast corner of Troy and Ventnor avenues, but no traffic light or traffic officer on duty. There was evidence offered in behalf of plaintiff that the defendant Mildred L. Jeffries, who was driving the car, was seen shortly after the accident, about fifty feet down Troy avenue, backing the car to the place where the plaintiff fell and that she said she was coming up Ventnor avenue and made a right-hand turn and didn't see the man she hit; that she knew that she had hit something but she did not know what she hit because she could not see.

She was unable to see to the right of the car because of snow on the side window and on the windshield except where it was cleared by the windshield wiper.

The plaintiff very positively states in his testimony that he was hit by a car and that he looked in all directions before crossing the street and that he saw no car.

Chapter 281 of the laws of 1928, article 5, subsection 5, page 728, provides: "In all business and residential districts pedestrians shall have the right of way over all vehicles at any and all crossings where traffic is not controlled by traffic signals or by a police or a traffic officer."

In the instant case the testimony was that the traffic was not controlled by traffic signals or a police or traffic officer. The plaintiff having entered upon Troy avenue had a right to assume that his passage would not be interfered with by other persons using the highway.

The defendant owed the plaintiff a duty to use reasonable care, and such care varies with circumstances and conditions.

The conditions that existed at the time of the collision, with the rain and wind and snow, required the exercise of greater care on the part of the driver of an automobile than might have been required under other conditions.

In the case of *Rullis* v. *Public Service*, 9 *N. J. Mis. R.* 738; 155 *Atl. Rep.* 455, the Supreme Court held that it was properly left to the jury to determine whether defendant's employe had turned the corner at such speed, or regardless of actual miles per hour, with such indifference to the rights of others on the highway, that he did not observe, or, observing, did not heed, a pedestrian crossing the street under such circumstances.

The court in that case further held that it could not say as a matter of law that under the proof the plaintiff was guilty of contributory negligence.

We think that the facts clearly entitled the plaintiff in the instant case to have his case go to the jury both on the question of negligence on the part of the defendant Mildred L. Jeffries, in the operation of the car, and on the question of the contributory negligence of plaintiff.

The third ground of appeal is that the court erred in charging the jury as follows:

"I charge you that if the defendant, in making her turn, suddenly put her car in such a position that the plaintiff, in the exercise of reasonable care, could not avoid colliding with it, and he did so collide and was injured thereby, that the defendants may not escape a verdict against them merely because she did not strike the plaintiff."

The attorney for the defendant during the trial had made very strenuous efforts to obtain an admission from the plaintiff that he had not been struck by the car but that he had walked into the side of the car, and he argues on his brief that there was no proof that the front part of defendant's car struck the plaintiff and that if the plaintiff, without seeing the defendant's car, walked into the side of defendant's car (as the appellant says he did), that there was then as a matter of law no negligence on the part of defendant and that there was certainly negligence on the part

of the plaintiff, and quoting from appellant's brief: "It might have been said that there was some proof of negligence if there was testimony that the front part of the defendant's car had struck the plaintiff while in the intersection, but there was no such proof in this case. The plaintiff himself was not able to say, as pointed out above, what part of the car struck him."

This is an incorrect statement of the facts. The testimony of plaintiff was very clear that it was the front of the defendant's car which struck him although he could not tell precisely what portion of the front part of the car hit him.

We must look at the court's charge with this background in mind. An examination of the charge will show that the language complained of is included within an excerpt of the charge.

What the court said was:

"There has been some dispute in the case as to whether or not the defendant's car collided with the plaintiff or the plaintiff collided with the car. I charge you that if the defendant, in making her turn, suddenly put her car in such a position that the plaintiff, in the exercise of reasonable care, could not avoid colliding with it, and he did so collide and was injured thereby, that the defendants may not escape a verdict against them merely because she did not strike the plaintiff. If by her negligence, and without plaintiff's fault, there was a collision between the car and the plaintiff, the question is not who struck whom, but whose fault was it that the collision happened."

This charge, as will be seen, consists of three sentences and the appellant has extracted for criticism the second sentence and removed it from its setting—with the first and third sentences omitted. When taken as a whole the statement is unobjectionable.

It correctly states the law in accordance with the decisions of this court.

We find no merit in any of the points raised by the appellant.

We are of the opinion therefore that the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 12.

*For reversal*—None.