ANGELO DiMEGLIO, PETITIONER-RESPONDENT, v. SLONK CONSTRUCTION COMPANY, DEFENDANT-PROSECUTOR.

Submitted May 3, 1938—Decided November 22, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the defendant-prosecutor, *Samuel D. Lenox*.

For the petitioner-respondent, *George Pellettieri*.

The opinion of the court was delivered by

HEHER, J.   This case arose under the Workmen's Compensation act of 1911, as amended.  *Pamph. L.* 1911, *pp.* 134, 763; *R. S.* 1937, 34:15-1 *et seq.*

Concededly, the employe suffered a compensable injury on October 4th, 1934.  He was obliged to cease work immediately.  The employer provided medical service for approximately one year; and, on the mistaken supposition that the employe's weekly wage was $25, voluntarily rendered com-

pensation at the weekly rate of $16.67, for temporary disability over a period of sixteen weeks and permanent incapacity to the extent of five per cent. of total.

On a formal petition for compensation, presented on July 11th, 1935, the compensation bureau, after hearing, made an award based upon an additional ten per cent. of total permanent incapacity, or fifteen per cent. in all, and allowed a fee of $150 to the employe's counsel. The employer appealed upon the grounds that (a) the evidence did not warrant this finding of total permanent disability, (b) the weekly rate of compensation thus allowed was excessive, and (c) the counsel fee awarded was also excessive; and the Mercer Common Pleas, finding that the employe's weekly wage was $20, reduced the weekly allowance to $13.33, but otherwise affirmed the judgment. The employer thereupon sued out this writ of *certiorari*.

*First:* The initial point now made is that the proofs do not support the finding of total permanent incapacity to the extent of fifteen per cent., and therefore the award "is excessive and contrary to the weight of the evidence." We do not think so.

While the evidence is sharply in conflict, it is reasonably inferable that, as found by the compensation bureau and the Common Pleas, the employe suffered, as a consequence of the accident, a sacro-iliac strain, with traumatic arthritis of the right sacro-iliac joint—*i. e.,* a dormant diseased condition rendered active by trauma. Although but thirty-four years of age, he has not since engaged in manual labor; and there is uncontroverted evidence that, prior to the accident, he had worked continuously as a laborer for twelve years and had never suffered a disabling illness. The employer is put to the necessity of classifying the employe as a malingerer, but the proofs do not sustain the claim. Such behavior is abnormal. A normal person does not feign wholly disabling invalidism for a period of years merely to receive the reduced income granted by the Compensation act in lieu of the fruits of toil; and such a finding is warranted only where the proofs bring that within the realm of probability. It cannot be made to

rest upon mere surmise or conjecture. We consider this case an apt one for the application of the rule that where two tribunals concur in factual findings, they will not be "lightly disturbed." This takes into account the value of personal observation of the injured employe and the witnesses in resolving the conflicts that ordinarily arise upon the evidence in such cases, particularly with reference to the *quantum* of disability.

The employer argues that "three doctors believed the employe was a malingerer," and that this requires such a finding. But these physicians did not express that opinion. True, they did not have the view that the X-rays showed arthritis; but, on the other hand, they did not doubt the subjective symptoms of pain. Finding physical disability, they could assign no reason for it. Moreover, there was positive medical evidence of sacro-iliac arthritis; and, when it is considered that there were no symptoms of that disease before the conceded injury, and that the employe had not theretofore been incapacitated, but was fully capable of laborious work, and that incapacity ensued thereafter, the weight of the evidence on the issue of feigned incapacity is clearly with the employe. As regards this question, the evidence adduced by the employer did not satisfy the test laid down by the law. *Tucker* v. *Frank J. Beltramo, Inc.,* 117 *N. J. L.* 72; *affirmed,* 118 *Id.* 301; *Atchison* v. *Colgate & Co.,* 3 *N. J. Mis. R.* 451; *affirmed,* 102 *N. J. L.* 425; *Anderson* v. *Federal Shipbuilding and Dry Dock Co.,* 118 *Id.* 55.

*Second:* It is next urged that there was error in the "failure to allow prosecutor credit for $3.34 over-payment per week for forty-one weeks' compensation which prosecutor had paid to employe." We find the point to be without merit.

As stated, the employer misconceived the weekly base wage rate upon which the compensation paid was calculated. There was no fixed weekly wage. The *quantum* of compensation depended upon the character of the work done. As "mason tender" DiMeglio was paid sixty-two and one-half cents per hour, and as a common laborer fifty cents per hour. Com-

pensation was rendered by the employer—for sixteen weeks temporary disability and twenty-five weeks for permanent—on the basis of a weekly wage of $25, whereas the amount, it is now admitted, upon which the compensation should have been calculated was $20. The bureau, in awarding compensation for permanent disability, made no allowance for the over-payments. And it made no finding respecting the duration of the temporary disability. The Pleas found that "the twenty-five weeks having been voluntarily paid" by the employer, "the excess paid will not be ordered refunded."

In the case of disability, both temporary and permanent, the statute prescribes weekly payments of compensation at a fixed rate, *i. e.*, a certain percentage of the weekly wage. *R. S.* 1937, 34:15-12 *et seq.* This is of the essence of the statutory scheme.

Compensation for "all classes of injuries shall run consecutively, and not concurrently," except as otherwise specifically provided. *Section* 34:15-16. Such payments "are in lieu of wages, and are to be received by the injured employe or his dependents in the same manner in which wages are ordinarily paid;" and commutation of the award is not permissible without the approval of the compensation bureau, and then only "if it appears that" it "will be for the best interest of the employe or the dependents of the deceased employe, or that it will avoid undue expense or undue hardship to either party, or that the employe or dependent has removed or is about to remove from the United States, or that the employer has sold or otherwise disposed of the greater part of his business or assets." *Section* 34:15-25. The parties are disabled from contracting out of the statute, so much so as to be deprived of the ordinary right of compromise of a disputed claim. *P. Bronstein & Co.* v. *Hoffman*, 117 *N. J. L.* 500.

In view of the peremptory requirements of the statute, and the underlying policy, it does not matter that the over-payments were the result of error, and were not made from a spirit of benevolence. The apposite principle was applied by our court of last resort in an analogous case: "The pro-

ceeding is a statutory one, and there is no provision in the statute for a return of any money which may have been paid either voluntarily or involuntarily to an injured workman. Statutory proceedings must be closely followed. A statute cannot be construed to give to a court powers other than those specifically mentioned in the act." *Levins* v. *Fulton Specialty Co.,* 99 *N. J. L.* 280. See, also, *Blackford* v. *Green,* 87 *Id.* 359; *affirmed,* 89 *Id.* 357; *Barbour Flax Spinning Co.* v. *Hagerly,* 85 *Id.* 407. The failure of the legislature since to exercise its amendatory power is, of course, significant of its acquiescence in that interpretation.

*Third:* As to the *quantum* of the counsel fee allowed in the bureau:

As found by the Common Pleas, the employe was entitled to an additional award for permanent incapacity in the aggregate sum of $666.50. The statute provides that the counsel fee allowed in the bureau shall not exceed twenty per cent. of "that part of the judgment or award in excess of the amount of compensation * * * offered or paid" prior to the hearing. *Pamph. L.* 1928, *p.* 399; *R. S.* 1937, 34:15-64. And so a revision of the allowance made is necessary to comport with the statutory mandate.

It is the settled rule in this court that the Common Pleas may, in the circumstances here presented, fix the allowance for services rendered in the bureau. *Slayback Van Order. Co.* v. *Eiben,* 115 *N. J. L.* 17; *Marotta* v. *Fabi,* 13 *N. J. Mis. R.* 690. But, in the making of the allowance, the limitation imposed by the statute last adverted to must be observed.

*Fourth:* Lastly, it is said the Pleas erred in allowing an additional counsel fee of $125 to the employe's counsel for services rendered in the proceedings in that court on the appeal.

This contention proceeds on the theory that the employe was not the prevailing party. *R. S.* 1937, 34:15-67. But it ignores the fact that in the Pleas, as in this court, the employe's right to compensation was challenged by the employer *in toto.* It was there contended, as here, that he had not sustained the burden of establishing his asserted

right to compensation. In these circumstances, the reduction of the weekly compensation allowance did not serve to deprive the employe of the status of a prevailing party. There is no merit in the claim that, under the cited statute, "an appellant prevails on an appeal when the appellate court reverses the lower court in any substantial particular."

The judgment of the Common Pleas is accordingly affirmed, except as respects the *quantum* of the counsel fee allowed for services in the bureau; and the cause is remanded for a revision of the counsel fee so awarded in consonance with the standard prescribed by the statute adverted to. The respondent employe is entitled to costs.