## TUCKER v. LOEW'S THEATRE & REALTY CORPORATION.

### No. 319.

Circuit Court of Appeals, Second Circuit.

June 1, 1945.

---

678

Archie Weltman, of New York City (Leopold Friedman, Thomas Bress, and Pauline Cohen, all of New York City, on the brief), for defendant-appellant.

William Logan, Jr., of New York City (Hunt, Hill & Betts and Helen F. Tuohy, all of New York City, on the brief), for plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, Madge Tucker, brought this action to recover damages for personal injuries caused by tripping over a worn-out carpet in defendant's theatre. Upon trial, the jury rendered a verdict for $6,000 in plaintiff's favor, and defendant has appealed from the judgment entered thereon by the District Court. It appears from the testimony that on January 20, 1944, at about 9 P. M., plaintiff and a friend, Rosemary White, visited defendant's theatre at 54th Street and Sixth Avenue, New York City. They went upstairs to the mezzanine lounge, when Miss White decided to telephone her mother. The telephone was sit-

uated in the powder room. Just beyond the powder room was the ladies' room. The floor of the powder room was carpeted, and two marble steps led up to it from the mezzanine lounge. While Miss White was telephoning, plaintiff went into the ladies' room, got weighed, came out, saw Miss White was still telephoning, and started to descend the stairs to wait for her friend in the lounge. The ball of her left foot was on the top marble step, her heel being on the edge of the carpet. As she started to put her right foot forward to go down to the next step she felt something "like some part of the carpeting" catch her left heel. The forward movement of her body pulled her heel loose from the carpeting, causing her to fall forward down the two steps to the floor of the mezzanine lounge. As a consequence she sustained a fracture of her left leg and other injuries.

The record reveals ample evidence that the carpet where plaintiff tripped was worn, frayed, and loose, and that such condition had existed for a considerable length of time, long enough to have enabled defendant to discover it with the exercise of reasonable care. Sprague, who was plaintiff's original attorney in this case, but who no longer had any interest therein, testified that the "carpet was worn at the place where it ordinarily joins on to the marble step or adjoins the marble step; that that worn condition had completely worn away the binding on the carpet by which it is fastened on the edge, and that the carpet was frayed for a space right in the middle of the stairway, I would say, of around a foot or so, and that this frayed condition left a gap between the carpet and the edge of the marble of about one-half inch." He "also noticed that the pins by which the carpet was fastened to the floor were irregularly spaced, that in some cases there were not pins at all but large headed tacks, and that these were—many of them—loose." Though his observations were made on February 7, 1944, the jury could properly infer that these conditions also obtained on the date of the accident. The depositions of Paul Murphy, manager of the theatre, and Mrs. Elsa R. Traisnel, the matron, in evidence were both to the effect that the condition of the carpet had not changed up to the time of Sprague's in-

spection.[1] And the nature of the defect was such as to support the inference that it must have developed over a long period of time, and that defendant therefore either did in fact notice it soon enough to make repairs or could have done so with the exercise of reasonable care. Moreover, the jury might have inferred notice from the facts that Murphy and Mrs. Traisnel did inspect the carpet and that defendant failed to call to the stand Mary Williams, the theatre's assistant manager, whose duty it was to examine the defective part of the carpet at various intervals through the day.

In addition to this evidence, which made a case for the jury, plaintiff also called to the stand one Bolson, an employee of W. J. Sloane & Co., engaged in the business of cleaning, altering, installing, and repairing carpets for more than twenty years. Bolson testified as an expert as to the condition of the carpet on March 31, 1944, and stated that in his opinion it must have taken at least six months for the carpet to have become thus defective. This testimony was connected with conditions at the time of the accident by Sprague, who also visited the theatre with Bolson and testified that the carpet had changed little since the date of his first visit, the only difference being that there was "evidence of a little more wear." Oklahoma Natural Gas Co. v. Ross, 10 Cir., 131 F.2d 238, 240. Defendant contends that Bolson did not qualify as an expert, and that even if he did, his testimony as to the duration of the defect was mere opinion not based on supporting facts. This objection was not made at the trial. Moreover, the qualification of an expert witness rests in general in the discretion of the trial court. Spring Co. v. Edgar, 99 U.S. 645, 657, 658, 25 L.Ed. 487. Bolson's opinion seems reasonably based on normal circumstances of carpet usage, taking into consideration the particular place where the rug was located and the fact that it was in a theatre. In any event, his evidence was not important in the light of the rest of the case—certainly not enough to affect the result, even had it appeared objectionable.

Defendant further objects to the admission of the hospital record showing treatment of plaintiff after the accident. The objection it now stresses, that the rec-

---

[1] True, they both asserted that the carpet was never defective; and defendant therefore contends their testimony does not go to show an unchanged condition of a defective carpet. But clearly it is the province of the jury to accept or reject portions of, as well as the entire, testimony of witnesses.

ord shows defendant to have been insured, was certainly not brought home to the judge, as required by Federal Rules of Civil Procedure, rule 46, 28 U.S.C.A. following section 723c, by the simple objection of "hearsay."[2] The judge obviously thought this objection was directed to the following paragraph of the record: "How did accident occur: 'While leaving ladies' room in balcony, pt. states she caught heel in carpet causing her to fall injurying 1. leg.'" This statement contains nothing that was not shown by a great deal of other evidence; it therefore was unlikely to have affected the jury one way or another. Moreover, the record was made in the regular course of business by persons unconnected with the litigation and is clearly admissible under the applicable federal statute, 28 U.S.C.A. § 695. Buckminster's Estate v. Commissioner of Internal Revenue, 2 Cir., 147 F.2d 331, 334; Waters v. Kings County Trust Co., 2 Cir., 144 F.2d 680, certiorari denied 65 S.Ct. 121; Ulm v. Moore-McCormack Lines, 2 Cir., 115 F.2d 492, rehearing denied 2 Cir., 117 F.2d 222, certiorari denied 313 U.S. 567, 61 S.Ct. 941, 85 L.Ed. 1525.

Defendant finally contends that the entire charge was erroneous. The charge was very brief, and the only criticism can be to its adequacy. But the case was simple, with issues of an elemental kind; and in view of the all too general tendency to verbosity in instructions which must leave the jury weary, if not confused, it is refreshing to find the themes here not unduly embroidered. The only matter which might give concern is the colloquy which occurred at the close of the formal charge when defendant asked for a charge that plaintiff must prove the defendant "had prior knowledge of the alleged defective condition" and the court, upon suggestion of plaintiff's counsel that knowledge could be either "actual or constructive," said: "True. Very well. I will make that charge with the modification that that knowledge must be either actual or constructive." This was not completely enlightening, but defendant appeared satisfied and passed to another point. Had de-

fendant asked for a further definition of that ancient legal solecism "constructive," and the court refused an explanation, the case would have been doubtful. But in the light of the facts as to the duration of the defective condition, we do not think the possibility of confusion great, or that reversal should be had without a definite instruction requested and refused. F. R. 51.

Affirmed.

[2] As plaintiff contends, defendant appears to have misinterpreted the record on this point anyhow. For the typed answers of "Yes" and "18 Precinct," apparently opposite the questions, "Is owner insured" and "Name of carrier," appear intended rather for the next questions, "Accident reported to Police" and "Officer No.— Precinct," as is demonstrated by the entry elsewhere on the same page of the written word "Self" after the printed words "Insurance carrier."