**LANDON v. UNITED STATES.**

No. 207, Docket 22285.

United States Court of Appeals Second Circuit.

Argued March 10, 1952.

Decided April 30, 1952.

Frank, Circuit Judge, dissented in part.

John D. Kelly, Asst. U. S. Atty., of New York City (Myles J. Lane, U. S. Atty., of New York City, on the brief), for defendant-appellant.

Robert H. Kilroe, of New York City, for plaintiff-appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

The United States of America here appeals from a judgment against it obtained by the plaintiff under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), formerly 28 U.S.C.A. § 931(a), for the personal injuries he sustained as a result of being struck by a truck owned and operated by the Post Office Department of the Government. Defendant's main attack

is on the veracity of the plaintiff and his chief witness in their account of the way the accident occurred. While their credibility was under serious fire, they in turn launched a similar attack on the truck driver and the defendant's other witnesses. There was nothing necessarily incredible in the plaintiff's case. He was employed by the Western Electric Company in Kearny, New Jersey; and on April 2, 1947, he was to deliver a set of plans to an engineer at the company's plant on 42d Street, between Tenth and Eleventh Avenues, New York City. Riding north on a Ninth Avenue bus, he alighted on the south side of 42d Street about 5:30 p. m. on this rainy afternoon and started to his left on the south crosswalk when he was struck in the middle of the street by the post office truck coming rapidly north in disregard of traffic signals. The defendant's case on the other hand was that plaintiff, hurrying in the rain, himself ran into the truck. Thus, this was typically the situation in which the trier of facts, having seen and heard the witnesses, was required to determine where the truth lay. His findings of fact supporting the plaintiff's case thus cannot be held "clearly erroneous." F.R.C.P., Rule 52(a), 28 U.S.C.A.

■ Defendant takes vigorous exception to the admission in evidence of the "Employee's Treatment Record" from the Medical Department of the plaintiff's employer at Kearny, New Jersey. The doctor in charge of the traumatic section of the company's hospital not only testified to his own treatment of the plaintiff, but also identified the record as one made in the regular course of business of his department. Admissibility appears to come within the very terms of the statute, 28 U.S.C.A. § 1732, and we are at a loss to find basis for the objection. It is true that he was treated at once by the Roosevelt Hospital in New York City, where he remained for 21 days, and that the record here admitted begins with some recital of the previous case history. (The hospital records from the Roosevelt Hospital were already in evidence.) Further the record reports the diagnosis of another doctor identified by the testifying doctor, who did not himself make the diagnosis. But all this goes only to the weight of the evidence, not to its admissibility, as the statute makes abundantly clear. Ulm v. Moore-McCormack Lines, 2 Cir., 115 F.2d 492, rehearing denied 117 F.2d 222, certiorari denied 313 U.S. 567, 61 S.Ct. 941, 85 L. Ed. 1525; Buckminster's Estate v. C. I. R., 2 Cir., 147 F.2d 331; Tucker v. Loew's Theatre & Realty Corp., 2 Cir., 149 F.2d 677; Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86, certiorari denied New York, N. H. & H. R. Co. v. Korte, 342 U.S. 868, 72 S.Ct. 108. The special circumstances of Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, where the defendant railroad sought admission of its own records for its own purposes, are not here present. See Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 187 F.2d 122, 129–130, certiorari denied Transcontinental & Western Air, Inc. v. Pekelis, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374.

■ Defendant also objects to the award as made by the trial judge, who allowed $6,000 for the injuries, $662.63 for loss of earnings from April 3 to June 2, 1947, and hospital and medical expenses of $482.85—or a total of $7,145.48. The award for injuries appears reasonable. Plaintiff did sustain serious and disabling injuries; how far an earlier accident may have been responsible was gone into quite thoroughly. Defendant directs a particular attack upon the allowance of loss of earnings and the amount of the hospital bills, saying that they are being, or will be, paid by plaintiff's employer and therefore are not recoverable from a third party, citing and relying on Drinkwater v. Dinsmore, 80 N. Y. 390. This particular aspect of the case requires somewhat fuller development.

The Drinkwater case appears to have had a checkered career. There a plaintiff's judgment in a personal injury action was reversed for error in excluding a question to the plaintiff as to whether or not his employer paid his wages while he was disabled. The court said that to recover for them the plaintiff must show that he actually lost his wages, and hence defendant could offer evidence that plain-

tiff had earned none or that his employer had contracted to pay "without service" or paid "from mere benevolence." This rule, carried to its logical conclusion, means that the tort-feasor receives the benefit of the employer's benevolence intended only for the employee, and in general will restrict and disrupt carefully devised sickness, accident, and pension plans for workers. Hence it appears to be generally repudiated; only one other state is said to follow it. See Cunnien v. Superior Iron Works Co., 175 Wis. 172, 184 N.W. 767, 18 A.L.R. 667, 677, which is supplemented by an extensive annotation of cases, 18 A.L.R. 678, 680, 681, with further cases collected in 95 A.L.R. 575 and 128 A.L.R. 692; also McCormick, Law of Damages 310, 311.

In New York itself, the Drinkwater case has been cited only once in the Court of Appeals, and that on a distinctly different matter, Clarke v. Eighth Avenue R. Co., 238 N.Y. 246, 144 N.E. 516, 37 A.L.R. 1, not approved by Cardozo, Crane, and Lehman, JJ., concurring on other grounds. It has also been ably criticized as minority doctrine not to be extended, Bethlehem Properties v. Patrick McGovern, Inc., 161 Misc. 111, 291 N.Y.S. 217, per Pecora, J. It appears, however, to have been applied in the lower courts in the absence of any agreement by the employee to reimburse his employer in the event of recovery. Drake v. New York State Electric & Gas Corp., 162 Misc. 167, 294 N.Y.S. 227; cf. Employers' Liability Assur. Corp., Limited, of London, England v. Daley, 271 App. Div. 662, 67 N.Y.S.2d 233, 68 N.Y.S.2d 743, affirmed 297 N.Y. 745, 77 N.E.2d 515. This latter emendation suggests a limitation on the doctrine, and the Drinkwater case itself implied the existence of other limitations. Thus it stated that proof of insurance actually paid to the plaintiff would not release the tort-feasor. Lassell v. City of Gloversville, 217 App.Div. 323, 217 N.Y.S. 128; Herald Nathan Press v. Bourges, 161 Misc. 208, 291 N.Y.S. 650. The N. Y. Workmen's Compensation Act, § 29, McK.Consol.Laws, c. 67, supplies another in giving the employer a lien on an employee's judgment against another for reimbursement of medical expenses and compensation awards paid. Calhoun v. West End Brewing Co., 269 App.Div. 398, 56 N.Y.S.2d 105. The extent to which some such limitation may be applicable here is perhaps not overclear; we might easily be faced with the not unusual danger for a federal court in applying state law of being more literal and mechanistic than the state court is likely to be itself. But under the circumstances we think we do not need to attempt resolution of these issues for New York.

■ Here the employee's employment contract was for work at Kearny, New Jersey. While the Tort Claims Act rests recovery on liability according to the law of the place where the negligent act occurred, 28 U.S.C.A. § 1346(b), formerly 28 U.S.C.A. § 931(a), yet New York will follow the law of the place of performance of a contract. Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992. New Jersey is not hampered by the Drinkwater rule. Its Workmen's Compensation Act provides also for reimbursement to an employer from an employee's third-party judgment for medical expenses and compensation. N.J.Rev.Stat. § 34:15–40, N.J.S.A.; Hartford Accident & Indemnity Co. v. Chartrand, 239 N.Y. 36, 145 N.E. 274. But further it holds generally: "A person committing a tort cannot set up in mitigation of damages that somebody else, with whom he has no connection, has either in whole or in part indemnified the party injured." Weber v. Morris & Essex R. Co., 36 N.J.L. 213; Corish v. North Jersey St. Ry. Co., 73 N. J.L. 273, 62 A. 1004, 1005; Rusk v. Jeffries, 110 N.J.L. 307, 164 A. 313.

At the trial the Western Electric officer in charge of compensation in the company's accident section testified at some length as to the company's plan of operation. He stated that it was a self-insurer, and that it had a plan of sickness and accident insurance whereby for a person of plaintiff's eighteen years of service and wage he would be paid his full wage of $77.05 up to 26 weeks he was out, followed by 26 weeks of half-pay. He also stated that "the company policy is such that we

endeavor to protect our employee so that any moneys that he is entitled to he will receive in settlement of any third party claim. I said the case will then be reviewed by Management and it is quite possible that they will at that time recommend that the money paid in the amount of temporary [i. e., temporary disability compensation] be returned to the employee." He had previously testified that a letter had been written to the New York Postmaster on April 17, 1947, stating the details of the accident, that the man was receiving care in accordance with the New Jersey Compensation Law, and that in the event of any settlement with Landon for the injuries sustained "we shall be subrogated to such settlement to the extent of temporary total disability compensation and permanent partial compensation; also for medical expenses which we shall be obliged to pay as the carrier." Claim was also filed under the Compensation Law in New Jersey, though it was stated that the case there had been closed (subject to later revival) pending the outcome of the present suit.

It thus appeared without challenge that the self-insurance scheme of the company called for complete control of any claim against a third party to include hospital and other payments, with no concession to the third party for such payments and with a right to compel reimbursement so far as the employee was concerned. True, the company might eventually decide to return the money thus collected to the employee; but that was for it to determine in the operation of its own labor policy. Such a contract is obviously in line with the New Jersey public policy outlined above; indeed, it does not seem inconsistent with the limitations—discussed above —of the local New York rule itself. At any rate there is no reason to prevent New York from giving effect to such a New Jersey employment contract. Hartford Accident & Indemnity Co. v. Chartrand, supra. We are not to suppose that

in so doing it will hold itself bound by some construction or extension of the Drinkwater rule which will actually destroy the effect of the contract it is enforcing.

Alternatively the government suggests that the recovery must be limited to the amount set by the New Jersey Compensation Law, viz., $25 per week maximum for the period of disability, instead of the actual rate of $77.05. But there is nothing in the testimony of the company's officer to suggest that such a limitation on the company's power was ever contemplated by it or its employees as a matter of agreement. And so far as concerns the law, while the Compensation Law may suggest and support the policy of reimbursement, it does nothing to render a contract for reimbursement illegal. There may be no right to reimbursement for an overpayment by mistake, cf. Di Meglio v. Slonk Construction Co., 121 N.J.L. 366, 2 A.2d 470, affirmed 122 N.J.L. 379, 5 A.2d 691; but this is far from saying that the parties may not so contract. Cf. Blackford v. Green, 87 N.J.L. 359, 94 A. 401.

Affirmed.

FRANK, Circuit Judge (dissenting in part).

I dissent solely with respect to the allowance in the plaintiff's damages of the total amount of his weekly wages during disability as loss of earnings. My reasons follow.

No more than my colleagues do I like the unpopular doctrine of Drinkwater v. Dinsmore, 80 N.Y. 390.[1] But the doctrine we, as federal judges, think desirable is here as irrelevant as our private choices of odors or poems; for the Federal Tort Claims Act requires us, in matters affecting substantially the outcome of the litigation, to apply the New York decisional rule, whatever it may be.

My colleagues have not shown that the New York courts have departed from the

1. It is interesting to note, however, that a somewhat similar rule seems to prevail in England. See, e.g., Dennis v. London Passenger Transport Bd., 1948, 1 All Eng.Rep. 779 (K.B.); Allen v. Waters & Co., 1935, 1 K.B. 200. See, also, U. S. v. Gaidys, 10 Cir., 194 F.2d 762, 765.

Drinkwater rule as applied to a case where an employee recovers from an employer wages during disability without obligation to repay them. I cannot see the significance of the fact that, in New York's highest court, three out of seven judges failed to concur in an extension of the Drinkwater doctrine, or that a New York lower court judge criticized the doctrine and said it should not be extended. The stubborn fact remains that no New York court has ever rejected it as such.[1a]

True, the doctrine is inapplicable, by its own terms, to a case where an injured employee has received reimbursement from an insurance company on a policy bought by the employee. See Drinkwater v. Dinsmore, 80 N.Y. 390, 392. But there is no suggestion in any New York case that the Drinkwater rule doesn't apply to a case of wage-payment by plaintiff's employer merely because the employer or employee or both call the payment "insurance." Such a distinction would make the application of Drinkwater turn on a mere choice of labels. The case itself says plainly what it means:

> "The defendant had the right to show that he lost no wages, or that they were not as much as claimed. He had the right to show, if he could, that for some particular reason the plaintiff would not have earned any wages if he had not been injured, or that *he was under such a contract with his employer that his wages went on without service,* or that his employer paid his wages from mere benevolence. In either case, upon such showing, the plaintiff could not claim that the defendant's wrong caused him to lose his wages, and the loss of wages could form no part of his damage." [2]

I agree, of course, that New York courts will turn to New Jersey "law" as to the meaning of a New Jersey contract, if that meaning is relevant. But I know of no New York rule that, as to the damages for a tort occurring in New York, the courts of that state will look to New Jersey decisions simply because the New York tort is to a man employed in New Jersey. The only possible relevance of New Jersey law that I see here is in helping to define the nature of the payments made by the employer to the plaintiff during the disability period; e. g., if the evidence here showed that, under the New Jersey employment contract, plaintiff's employer, if it so elected, could compel repayment by the plaintiff, then, without doubt, the Drinkwater rule would not apply. Drake v. New York State Electric & Gas Corp., 162 Misc. 167, 294 N.Y.S. 227.

But my colleagues point out no New Jersey cases which help us to construe the employment contract here or which pertain to the employee's duty to reimburse. My colleagues rely solely on one statement elicited on cross-examination from the employers' accident section head:

> " * * * the company policy is such that we endeavor to protect our employee so that any moneys that he is entitled to he will receive in settlement of any third party claim. I said the case will then be reviewed by Management and it is quite possible that they will at that time recommend that the money paid in the amount of temporary be returned to the employee."

This statement, as my colleagues note, should be construed in light of the witness' previous testimony that the company notified the United States Post Office, pursuant to the New Jersey Compensation law, that the company was asserting its right to a lien on the employees' third-party judgment to the extent of "temporary total disability compensation and permanent partial compensation; also for medical expenses which we shall be obliged to pay. * * *" This lien, I believe, would cover only medical expenses and temporary disability payments required by the New Jer-

---

1a. It is only because of legislative revision of the Workmen's Compensation Act that employees whose hospital or medical bills have been paid by their employers can sue a third party and include in their damages those medical expenses. See Calhoun v. West End Brewing Co., 269 App.Div. 398, 56 N.Y.S.2d 105.

2. Emphasis added.

sey Compensation Act to be paid the employee for injuries like the plaintiff's (here $25.00 a week). See New Jersey Rev. Stat. 34:15–50, N.J.S.A.; Di Meglio v. Slonk Construction Co., 121 N.J.L. 366, 2 A.2d 470, affirmed 122 N.J.L. 397, 5 A. 2d 691. It is this amount only for temporary disability payments, required to be paid by New Jersey law (and not the entire weekly wages paid to plaintiff during disability), which the employer could recover upon his lien on the plaintiff's judgment, and it is, I think, this amount only which the witness referred to when he said "the case will then be reviewed by Management and it is quite possible that they will at that time recommend that the money *paid in the amount of temporary be returned to the employee."* Aside from this statement, there is no evidence in the record to give the slightest indication that the employee, under the plan, was required to return the wages paid him in the event of a third-party recovery.

I think the proper procedure here is to remand for the taking of further evidence about the exact arrangement under which the employee's wages were paid, and the making of a finding of fact thereon.