231 N.J. Super. 353 (1989)
555 A.2d 716
ETHEL HAJNAS NOW KNOWN AS ETHEL SUGALSKI, PETITIONER-RESPONDENT,
v.
ENGELHARD MINERAL & CHEMICAL CO., RESPONDENT-APPELLANT.[1]
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1989.
Decided March 13, 1989.
*354 Before Judges O'BRIEN, SCALERA and STERN.
Francis T. Guiliano argued the cause for appellant (Mattson, Madden and Polito, attorneys; Francis T. Guiliano, of counsel and on the brief).
Allan S. Goldberger argued the cause for respondent (Goldberger and Seligsohn, attorneys; Allan S. Goldberger, on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
The issue presented by this appeal concerns when and how an employer may seek recovery for the overpayment of workers' compensation benefits made to a widow who remarries and fails to advise the employer of that fact.
Some of the background facts are not in dispute. For many years until March, 1974, Stanley Hajnas (Stanley), was employed by Engelhard Mineral and Chemical Company (Engelhard). In the course of that employment he was exposed to dust and acid fumes and consequently developed chronic bronchitis, pulmonary emphysema and lung disease which rendered him totally disabled leading him to seek workers' compensation benefits. Eventually he developed cancer from that exposure and died on September 19, 1975. On November 18, 1975 Ethel Hajnas (Ethel), as his dependent widow, also filed a claim petition seeking benefits for herself and a dependent child.
*355 The compensation matters came on for trial in which compensation was sought on behalf of Stanley, now deceased, for permanent total disability from March 4, 1974 until his death and in which Ethel sought dependency benefits for herself as his widow, and for a dependent daughter. The trial took place over six different hearing dates between January 27, 1978 and November 17, 1978. However, it was not until September 19, 1979 that a formal judgment was finally entered.[2] On Stanley's petition there was an award for permanent total disability. On the other, the judgment was broken down to $14,395.92, representing compensation for Ethel and the dependent child from September 19, 1975 to May 30, 1978, and for $28,807.84 at the rate of $93.10 per week from May 30, 1978 to May 4, 1984, for Ethel's continued widow dependency benefits alone, the latter award being entered expressly "subject to conditions and extensions of N.J.S.A. 34:15-13." Ethel did receive the weekly payments of $93.10 through April 3, 1984 when the payments were halted.
N.J.S.A. 34:15-13(f) provides that,
Should that any dependent of a deceased employee die during the period covered by such weekly payments the right of such dependent to compensation under this section shall cease but should the surviving spouse of a deceased employee remarry during such period and before the total compensation is paid the spouse shall be entitled to receive the remainder of the compensation which would have been due said spouse had the spouse not remarried, or $1,000, whichever is the lesser.
Thus, upon remarriage, the spouse of a deceased employee is no longer entitled to such death benefits except for the limited statutory amount. Blumenfeld v. Rust Craft Greeting Cards, Inc., 94 N.J. Super. 584, 585 (App.Div. 1967), aff'd 51 N.J. 1 (1967).
When Ethel testified during the original hearings on January 27, 1978, she had not yet remarried, but had been living with *356 her soon-to-be second husband since July 1977. However, she did remarry on July 29, 1978, before the hearings ended and the final judgments were entered in the Workers' Compensation Division (Division). There was no dispute that she never advised the attorney representing her in the Division in 1978 of the fact of her remarriage. Additionally, she failed to voluntarily notify either Engelhard or its compensation insurance carrier, New Jersey Manufacturers Insurance Company (Manufacturer's) of that fact.
The evidence at the most recent hearings indicated that during the spring of 1984, Manufacturer's had twice sent Ethel a letter requesting, among other things, that she indicate her then marital status. Although Ethel claimed to have lost the first such letter she finally responded to an April 3, 1984 letter indicating that she had remarried, which Manufacturer's did not receive until July 9, 1984.
In the interim, however, on or about June 22, 1984, Manufacturer's sent an investigator to visit Ethel at home at which time she reluctantly admitted to her remarriage which she then claimed to have taken place in "late 1983." However, when the investigator went to the local municipal registrar's office he discovered that the marriage certificate listed the date of marriage as being July 29, 1978. Ethel completely denied that any such investigator had ever visited her home. During the time that she received the benefits payments they were made by check, made out to her as "Ethel Hajnas" and endorsed by her in that name only.
Engelhard then brought this action as a motion in the Division, seeking reimbursement from Ethel of $21,599.20, representing overpayments of $93.10 weekly, from July 29, 1978 (the date of her remarriage) to April 3, 1984 (the date of the last payment). At the plenary hearing on this motion Ethel insisted that her compensation attorney had not explained to her that if she remarried there would be a termination of her widow's dependency benefits and that, had she known of this condition, *357 she would have notified Engelhard. The former attorney testified that, while he had no specific recollection of any such discussions with Ethel, it was his "practice" to always do so. He ventured that he "probably" had discussed this contingency with her, as evidenced by his January 27, 1978 statement on the record before the workers' compensation judge that the award of dependency benefits to her would be "subject to ... remarriage, if there is any." After hearing all of the evidence offered on Engelhard's motion seeking restitution the workers' compensation judge did not resolve this precise factual issue but did "find" that Ethel had failed to advise Engelhard or Manufacturer's of her remarriage, and observed that in this regard "[t]here is no question factually: the question is whether [Engelhard] is entitled to recover."
The compensation judge dismissed the motion because she viewed DiMeglio v. Slonk Const. Co., 121 N.J.L. 366 (Sup.Ct. 1938), aff'd, 122 N.J.L. 379 (E. & A. 1939), as "authority for the proposition that voluntary overpayments are not recoverable" opining that since "there is no provision in the statute of Workers' Compensation for return of any money which may have been paid either voluntarily or involuntarily to an injured workman (dependent)" she was without jurisdiction to award any relief.
On this appeal Engelhard simply asks that we direct where and how an employer can go about seeking restitution of such overpayments which it contends amount to unjust enrichment. Ethel's position is simply that such overpayments are not recoverable in any forum.
Inquiry into the prior case law in this general area seemingly reveals inconsistent resolutions of the problem. Engelhard contends that the recent decisions by the New Jersey Supreme Court in Young v. Western Electric Company, Inc., 96 N.J. 220 (1984), and the Appellate Division in New Jersey Manufacturers Insurance Co. v. Blau, 194 N.J. Super. 27 (App.Div. 1984), certif. granted and summarily remanded 99 N.J. 158 *358 (1984), confirmed on remand, 199 N.J. Super. 1 (App.Div. 1985), have thrown into question the continued viability of the line of cases of which DiMeglio is a part. Specifically, Engelhard argues that, while the line of cases beginning with Levins v. Fulton Specialty Co., 99 N.J.L. 280 (E. & A. 1923), which includes DiMeglio and Ifka v. International Smelting and Refining Co., 188 N.J. Super. 586 (App.Div. 1983), hold that an action to recover overpayments of workers' compensation benefits is not statutorily allowed, Young and Blau now stand as authority for the proposition that jurisdiction to hear claims for restitution of overpayments lies in the Division. Thus, Engelhard argues that our Supreme Court in Young has impliedly overruled the Levins line of decisions to the extent that it barred an employer from recovering overpayments to an employee.
Ethel points out that since the Levins decision in 1923, the Legislature has repeatedly amended the provisions of the workers' compensation law without attempting to overrule it and that any such relief must originate with the Legislature. Additionally, she argues that, whether or not she was aware of the fact that her remarriage would terminate her benefits, "neither the Statute nor the cases have ever imposed an affirmative obligation on the part of the widow to notify her late husband's employer, or its insurer, of a change in her marital status." In doing so she characterizes the payments for which Engelhard seeks reimbursement here as, "voluntary overpayments" which were "mistakenly" or "erroneous[ly]" paid "through its own neglect."
However, we need not decide at this juncture whether Engelhard's overpayment of benefits to her were "voluntary" or the result of a clerical error or mistake in calculation as she contends. It is sufficient that Engelhard has alleged that they resulted from Ethel's willful concealment of her remarriage in spite of the continuous efforts to secure information from her which would validate her continued eligibility and independently that she breached a continuing duty to reveal that fact. In *359 such circumstances basic fairness dictates that Engelhard at least should be afforded a forum in which to litigate its entitlement to recovery of such overpayments on the basis of alleged unjust enrichment.
In Levins, supra, the claimant suffered a work related injury and was adjudged totally disabled. Within fourteen months, however, he had sufficiently recovered from his injuries to reenter employment with another employer at a weekly wage exceeding the amount of his award. Fulton, his first employer, was apparently aware that Levins had returned to work but, nonetheless, continued to pay him the compensation benefits for nearly three years following his reemployment. Nearly a year after it ceased making payments to Levins, Fulton petitioned the court for a cancellation of the original award and sought restitution for the overpayments made to Levins subsequent to his return to employment. The trial court did cancel the compensation order, apparently as of the date of a medical examination which indicated that Levins had fully recovered from his injuries, but refused to order restitution.
On appeal, the then Supreme Court agreed that there was insufficient proof to justify a finding that Levins' recovery antedated the physical examination. On the issue of restitution it also concluded that the overpayments
had been made for some time with the knowledge that Levins had returned to his work. The remedy of [Fulton] was to apply sooner under the statute for a modification or cancellation of the [compensation order]. The proceeding is a statutory one, and there is no provision in the statute for a return of any money which may have been paid either voluntarily or involuntarily to an injured workman. Statutory proceedings must be closely followed. A statute cannot be construed to give a court powers other than those specifically mentioned in the act. [Levins, 99 N.J.L. at 282].
The Court of Errors and Appeals affirmed "for the reasons expressed in the opinion of the Supreme Court." Ibid.
In DiMeglio, supra, the claimant suffered a compensable occupational injury which forced him to cease work for his employer, Slonk. Pending the disposition of DiMeglio's disability claim, Slonk provided him with medical care and voluntarily *360 paid him disability compensation. After approximately 41 weeks, the then Workmen's Compensation Bureau adjudicated DiMeglio's petition, adopting as part of its award, Slonk's calculation of the weekly wages which it had voluntarily paid to him. However, Slonk had mistakenly calculated DiMeglio's weekly wage to be higher than it actually was and appealed the Bureau's determination to the County Court which reduced the award only prospectively.
Slonk appealed to the then Supreme Court seeking, inter alia, a credit for the past "overpayments" it had made voluntarily to DiMeglio during the pendency of his formal compensation petition. That court denied any such relief because such payments were made "voluntarily."
In view of the peremptory requirements of the statute, and the underlying policy, it does not matter that the overpayments were the result of error, and were not made from a spirit of benevolence.... "[T]here is no provision in the statute for a return of any money which may have been paid either voluntarily or involuntarily to an injured workman.... A statute cannot be construed to give a court powers other than those specifically mentioned in the act." [121 N.J.L. at 370-71].
The Court of Errors and Appeals affirmed "for the reasons given by the Supreme Court." DiMeglio, 122 N.J.L. at 379.
Both Levins and DiMeglio, the principles of which were followed in Ifka, are clearly distinguishable from the facts alleged in this case. In Levins, the recovery was primarily precluded because the employer could not demonstrate that the employee was not disabled during the period in which he was both employed and receiving compensation. Cf. Great American Insurance Co. v. Yellen, 58 N.J. Super. 240, 245-246 (App. Div. 1959). In DiMeglio, the payments sought to be recovered obviously were not made pursuant to a compensation order to an eligible claimant who subsequently lost that eligibility, as in this case, but rather constituted a private agreement between private parties. Thus, there was no authority in the compensation statute for a compensation court to order a set-off in such circumstances. As we suggested in Blau, neither Levins nor DiMeglio should be read to preclude an employer from securing *361 restitution of benefits paid to a claimant where it is based on the wrongful acts or omissions of that claimant. Cf. Ifka, 188 N.J. Super. at 587.
Generally, the purpose of the Workers' Compensation Law was to supersede, in the employer-employee relationship, common law tort or statutory wrongful death actions by employees, and to substitute a statutory formula for compensation to the injured employee. United States Cas. Co. v. Hercules Powder Co., 4 N.J. 157, 162-163 (1950). In furtherance of that goal, the Division has been granted the exclusive jurisdiction to hear and adjudicate all claims by an employee against an employer arising out of a New Jersey employment. N.J.S.A. 34:15-49. Handleman v. Marwen Stores Corp., 53 N.J. 404, 412 (1969). Incident thereto, the Division may consider and order reimbursements amongst insurance carriers, see N.J.S.A. 34:15-15.1, and Aetna Cas. & Sur. Co. v. Para Mfg. Co., 176 N.J. Super. 532 (App.Div. 1980), and may at least "consider" certain prior set-offs and credits which might affect the amount of its final award if it bears on issues committed to its exclusive jurisdiction. Young, supra, 96 N.J. at 227. Having said that, we also recognize that the Division still has only limited jurisdiction which may not be expanded by "consent, waiver, estoppel or judicial inclination." Riccioni v. American Cyanamid Co., Calco Chem. Div., 26 N.J. Super. 1, 5 (App.Div.), certif. den. 13 N.J. 289 (1953).
In sum, the Division may only exercise those powers expressly allocated to it or those which are fairly implied as incident to its expressly granted powers.[3]Young, 96 N.J. at 225. In this case there is a direct relationship between Engelhard's attempt to have the original judgment modified which was entered as a result of the Division's statutory duty to determine the extent *362 of Ethel's eligibility for dependency payments in the first place. Cf. id. at 227.[4] Notwithstanding such inherent jurisdiction, the Division's jurisdiction to enter an enforceable general money judgment against one other than an employer or its insurance carrier in connection with such a review appears highly questionable. N.J.S.A. 34:15-49. Cf. N.J.S.A. 34:15-15.1 and 34:15-58.
In Blau, supra, we were presented with a similar issue: "whether the Superior Court or the Division of Workers' Compensation ... has jurisdiction to hear and to determine [an] insurance carrier's claim for recovery of benefits paid to [a claimant] after she was allegedly not entitled to receive the benefits." 194 N.J. Super. at 30. However, there the restitution was sought in the Law Division of the Superior Court rather than in the Division. The plaintiff compensation carrier argued that, had it attempted to recover such overpayments in the Division, under Levins, DiMeglio and Ifka, it would not be afforded a remedy. Id. at 31. When the Law Division denied the employee's motion for summary judgment on jurisdictional grounds he appealed to this court. We declined to resolve the issue of whether those cases were still controlling, but did note that "other cases," such as Yellen and Verra v. Mayor and Council of Hoboken, 70 N.J. Super. 422 (App.Div. 1961), "cast doubt upon the viability of these holdings." Blau, 194 N.J. Super. at 32. Rather we concluded,
that the exclusive original jurisdiction of the Division over all claims for workers' compensation benefits includes a claim to recover such benefits when paid in the circumstances alleged here. Basically, plaintiff carrier's claim for recovery based on unjust enrichment and [claimant]'s claim for a continuation of benefits depend, at least in part, on whether [claimant] has retained or lost her dependent status under the Workers' Compensation Act. That issue is within the exclusive jurisdiction of the Division.
Where, as here, a carrier discontinues making payments due under the terms of an existing order, proceedings to compel continuation of payments, beyond *363 question, are within the exclusive jurisdiction of the Division. We see no reason to reach a different result as to jurisdiction where the carrier institutes an action to recover payments alleged to have been improperly received under a similar order. [Id. at 32 (citations omitted)].
However, we expressly reserved on the precise issue of whether the Division had the authority to order the petitioner to make restitution even though it could entertain the underlying dispute because of its integral relationship to the original compensation issues. Id. at 33.
Upon further reflection of the problems which might be encountered in attempting to enforce any declaration rendered in the Division in favor of such an employer, we realize that we should now authorize a procedure which will ultimately provide for complete relief if, on remand, the Division does modify the judgment. In such a case Engelhard should be able to have some "judicial relief" available to the extent that it may secure a valid judgment upon which to secure a recovery of the overpayments unjustly received by Ethel. Cf. Verra v. Mayor and Council of Hoboken, 70 N.J. Super. 422, 426 (App.Div. 1961). As in Blau, consideration of Engelhard's unjust enrichment action would necessarily call upon the Division to consider all of the elements and issues incident to such a cause of action. These would include such factors as the extent of the efforts made by the employer or its carrier to secure her cooperation, as well as Ethel's alleged reason for the failure to advise of her remarriage which would statutorily bar some of the periodic payments provided in the original judgment. See 2 Larson, Workmen's Compensation Law, § 64.41 (1987), and cases cited therein.
Hence, the first step is to remand this matter to the Division in order that it may consider the evidence adduced to determine if its original award to Ethel should now be modified because of the fact of her remarriage. Estedde v. Bd. of Ed. of Borough of Red Bank, 14 N.J. 256 (1954); Eclipse Pioneer Div. of Bendix Aviation Corp., v. Minton, 35 N.J. Super. 430 (App.Div. 1955). That issue will be resolved upon settled principles *364 of unjust enrichment, requiring Engelhard to bear the traditional burden of proof in connection with such a claim and reserving to Ethel the right to assert any defense deemed appropriate to such a claim, thus guarding the due process rights of the parties. If the Division determines such relief to be appropriate it may modify the original judgment accordingly. Lee v. W.S. Steel Warehousing, 205 N.J. Super. 153, 155-156 (App.Div. 1985); V. v. Long Branch Sewerage Auth., 86 N.J. Super. 56 (App.Div. 1964).
Thereafter, if Engelhard is successful in the Division, it may institute enforcement proceedings in the Law Division of the Superior Court which may be treated as a summary proceeding pursuant to R. 4:67-1 et seq., if appropriate. Cf. Young v. Western Electric Company Inc., supra, 96 N.J. at 232-233. In this way if Engelhard is truly an aggrieved party, at least it may obtain a meaningful relief, yet may do so without any infringement upon the separate jurisdiction allocated to the Division and the courts, as mandated by statute. Zietko v. New Jersey Manufacturers Ins. Co., 132 N.J.L. 206 (E & A 1944).
The procedures which we have fashioned here are consistent with the cases which bar recovery for the type of voluntary overpayments made in DiMeglio. To do otherwise would be to countenance Ethel's alleged unjust enrichment by encouraging her failure to make restitution in such circumstances. Great American Insurance Company v. Yellen, 58 N.J. Super. 240, 244 (App.Div. 1959). See also Young v. State Farm Mutual Auto Ins. Co., 80 N.J. Super. 582 (App.Div. 1963) and Deskovick v. Porzio, 78 N.J. Super. 82 (App.Div. 1963). See also Young v. Western Electric Company, Inc., 96 N.J. 220 (1984), where duplicate payments of workers' compensation benefits were made and the Court expressed that some judicial relief should be made available in such a situation. Id. at 227, 232-233.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.
NOTES
[1] The original claim petition bore a dual caption naming "Ethel Hajnas" as a petitioner and her deceased husband, "Stanley Hajnas" as a separate petitioner.
[2] The practice of fragmenting these hearings, absent good cause, is hereby expressly disapproved for reasons which are obvious in this case and for a myriad of other reasons.
[3] Cf. N.J.S.A. 43:21-16(d) and N.J.S.A. 43:21-55, which expressly provide for the recoupment of benefits improperly paid under the provisions of the Unemployment Compensation Law, N.J.S.A. 43:21-1, et seq., and the Temporary Disability Benefits Law, N.J.S.A. 43:21-25, et seq., respectively.
[4] The Division is expressly granted continuing authority to review and/or modify compensation awards based upon changes in a claimant's level of disability. N.J.S.A. 34:15-27.