## ULM v. MOORE–McCORMACK LINES, Inc.

### No. 122.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1940.

Rehearing Denied Jan. 27, 1941.

See 117 F.2d 222.

Joseph S. Robinson, of New York City (N. Sinclair Robinson and Arthur S. Gales, both of New York City, on the brief), for plaintiff-appellee.

John G. Crawley, of New York City (Barry, Wainwright, Thacher & Symmers and Howard B. Nichols, all of New York City, on the brief), for defendant-appellant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The plaintiff, a seaman employed on a vessel of the defendant, brought suit against the defendant claiming damages for personal injuries due to negligence and also seaman's maintenance and cure. His claims arose from his fall down a companionway ladder from the main deck to the sleeping quarters of the crew early on Christmas morning, 1939. A jury trial resulted in a plaintiff's verdict of $25,000 on the claim of negligence, and of $10,000, reduced to $3,000 on the court's order and with plaintiff's consent, on the claim for maintenance and cure; and judgment for plaintiff was entered accordingly. On this appeal defendant argues vigorously that there was no evidence of negligence to be submitted to the jury; but the evidence of lack of light in the companionway and that the ladder was not secure at its foot seems to us to justify such submission. The important problem herein arises with respect to rulings on evidence.

Of the several rulings of the court at the trial assigned for error, those involving the exclusion of certain hospital records seem to us decisive of the appeal. These rulings concerned first, the clinical record of the United States Marine Hospital in Chelsea, Massachusetts, covering plaintiff's hospitalization there for a short time in January, 1936; second, two different sets of clinical records covering plaintiff's treatment for the injury in suit here, in the United States Marine Hospital, Stapleton, Staten Island, New York, from December 25, 1939, until February 13, 1940, and again on February 28, 1940; and third, the clinical record of the United States Marine Hospital, Galveston, Texas, covering plaintiff's hospitalization and appendectomy there, from November 20 to December 8, 1939. The latter illness, it will be noticed, was just before the accident in suit; in fact, plaintiff had only shipped on defendant's boat on December 18, 1939, a week before his injury. Of the Stapleton records, the second one offered was a full clinical record, covering many pages, of his first stay at that hospital; while the other consisted of two pages of "Admission Note" of the ward surgeon covering his second admission to this hospital.

All of these records were excluded by the district court as being not properly identified and lacking adequate foundation of testimony by some keeper of the records. The issue was before the court several times through the persistence of counsel. The first offer, of the Chelsea record, was met with an objection that it was irrele-

vant and also that it was not the best evidence. The court promptly sustained the objection, saying, "There is a better way of proving that. Subpoena the doctor." Defendant then cited 28 U.S.C.A. § 661, providing for the admission of public records of the United States properly authenticated by certification and seal—formalities lacking here. The court again said that there must be a foundation laid for the admission of such records, that preliminary things must be shown, and that the fact that the witness then on the stand had identified himself as the patient was insufficient. The next offer was that of the second Stapleton record, where the same objection was sustained. Later the offer of the Chelsea record was renewed (counsel having previously partly acquiesced in the court's ruling by saying that he supposed the court must be right), and again the court excluded it, "no proper foundation having been laid." This was followed by offer of the first Stapleton record, but the court sustained an objection based "on the ground that no proper foundation has been laid for it." Last offered was the Galveston record, which produced considerable discussion, wherein plaintiff's counsel conceded that the record was produced pursuant to subpoena; and the court excluded it, saying, "No proper foundation has been laid under the same theory that I ruled out similar records." Finally, just before summation to the jury, counsel submitted a long affidavit supporting his claim for admission of the Galveston record, but was unsuccessful in inducing the court to change the ruling.

■ We think the various records were sufficiently identified to become admissible, so far as relevant, under the appropriate governing law. The concession of plaintiff's counsel with reference particularly to the Galveston record, that his objection still held, though the record was produced pursuant to subpoena, and "I do not question the production of the paper. I question its contents," together with the fact that defendant's counsel linked together his offers of the various records as did the court specifically in its ruling excluding them, shows that there is no question of the identity of the various papers as coming from the records of the respective hospitals. Moreover, the Stapleton records were yet more explicitly identified. The "Admission Note" on plaintiff's second admission to the hospital was identified by the testimony of a hospital interne as having been made by a named staff physician; while the record of the first admission was produced by plaintiff during the testimony of a hospital doctor, who identified the "Admission Note" in that record as having been made by Dr. Beardsley of the staff and who testified that Dr. Beardsley was ill at the time of the trial and had been so for some time previously.

■■ It is true that defendant's offers were somewhat clumsily made. When counsel cited authority, he referred to the statute 28 U.S.C.A. § 661, above, dealing with formal government records, and then again to New York Civil Practice Act, § 374a, but not, so far as appears, to the recent statute we regard as controlling, 28 U.S.C.A. § 695. But since under Federal Rule 43(a), 28 U.S.C.A. following section 723c, defendant is entitled to rely upon that statute or rule which favors the reception of the evidence, we are to treat its claims as made on that basis. Counsel's very persistence made clear the importance he attached to the rulings, and there was no permanent waiver of objection as plaintiff now asserts. The taking of formal exception is no longer necessary. Federal Rule 46.

The statute which we have cited as controlling, 28 U.S.C.A. § 695, was passed in 1936, and provides for the admissibility, as evidence in any court of the United States, of a memorandum or record of any act, transaction, occurrence, or event made in the regular course of business. Further, any circumstances other than that the record was made in the regular course of business and that the regular course of business was to make it at the time or within a reasonable time thereafter are not to affect admissibility, but may be shown to affect the weight of the evidence; among these circumstances is lack of personal knowledge by the entrant or maker. The term "business" is defined to include "business, profession, occupation, and calling of every kind."

■ Plaintiff asserts that, since this act is similar to the New York statute of 1928, Civil Practice Act, § 374a, it must have been copied therefrom and should receive the similar restrictive interpretation which that statute has received, citing particularly Johnson v. Lutz, 253 N.Y. 124, 170 N. E. 517, and Geroeami v. Fancy F. & P. Corp., 249 App.Div. 221, 291 N.Y.S. 837.

But this act did not come from the New York statute. Both in fact derive from the activities of a committee of experts on the law of evidence appointed by the Commonwealth Fund of New York, who, in 1927, published a model act for "Proof of Business Transactions." Morgan and Others, The Law of Evidence: Some Proposals for Its Reform, c. V, p. 63. See 5 Wigmore on Evidence (3d Ed. 1940) § 1520. The objective, as Wigmore so lucidly explains, was to do away with the technical rulings which excluded records ordinarily used in business transactions when not formally identified by the makers.

The Commonwealth Fund's proposal became the model for the New York, the federal, and some half dozen state statutes, and has led to further like proposals which seem to have met with the universal approval of those interested in law reform. Thus, the National Conference of Commissioners on Uniform State Laws has recommended for general adoption a Uniform Business Records as Evidence Act, along similar lines, which has already been enacted in several states. A like proposal appears in Barrow, Business Entries before the Court, 32 Ill.L.Rev. 334. All these proposals were approved and recommended by a distinguished committee of the American Bar Association's Section on Judicial Administration, supported by an advisory group of 44, in a report in 1938 which was approved by the section and by the House of Delegates of the Association. 24 A.B.A.J. 726, 751, 752; 63 A.B.A.Rep. 525, 582; 5 Wigmore on Evidence, § 1520. The restrictive interpretation of the statutes embodying this new reform in New York and elsewhere has been the subject of caustic comment by Dean Wigmore on "the perverse stolidity of the juristic mind." Ibid. § 1520. He holds the particular decisions relied on by plaintiff to be contrary to the express words of the statute. Ibid. § 1530a; cf. also Roge v. Valentine, 255 App.Div. 475, 7 N.Y.S.2d 958, which he cites as "another instance of judicial statification."

In Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 973, we supported a broad interpretation of this statute justifying the admission of a coroner's certificate embodying an opinion or conclusion as to ground or cause of death of a deceased, even though the New York precedents might cast doubt on this conclusion. Compare Johnson v. Lutz, supra; Beglin v. Metropolitan Life Ins. Co., 173 N.Y. 374, 66 N.E. 102; Flynn v. Metropolitan Life Ins. Co., 252 App.Div. 78, 297 N.Y.S. 349; but see Scott v. Empire State Degree of Honor, 204 App.Div. 530, 198 N.Y.S. 535. But whatever should be the judicial attitude toward this statute, we do not think the cited New York cases are in point on the immediate issue here. They did not involve the problem of identification, but only whether or not opinion statements of a doctor and of a policeman contained in official or business records were admissible. Here the records were claimed primarily to show direct observations made by attending physicians, not entries of opinions.

There remains the question of relevancy. As to this, certain of the records at least were highly relevant. Indeed, it is difficult to see why plaintiff's counsel should dare jeopardize a possible verdict (one of most substantial amount, as it turned out) by seeking exclusion of records so directly in point as were the Stapleton records, involving the hospital treatment for the very accident in suit. The most important feature of the defendant's case was an attack upon the credibility of the plaintiff. This attack it had pressed in various ways, such as the showing of a rather extensive criminal record on the part of the plaintiff. The hospital records were particularly relevant on that issue. They were admissible to support the claim that no blow on the head occurred because of the absence of any sign of bodily injury, and that even if there was injury from the accident plaintiff was exaggerating its results. Plaintiff had offered testimony showing a fractured nose, subluxation of the coccyx, and other bodily injuries, but even more important, a serious brain injury, since he had developed a stutter, a trembling of the hands, lips, and eyelids, facial twitches, a lapse of memory, and other nervous disorders. The Stapleton records were vitally important as to the extent and cause of these injuries, and their exclusion requires a reversal of the judgment below for à new trial.

There is less showing of the relevancy of the Chelsea record, which may perhaps be only cumulative as to plaintiff's condition in 1936, since there was direct testimony of a doctor who attended him. But the Galveston record is relevant because it showed he then already had a deviation of the nasal septum, which might cast doubt upon the existence and extent of the injury to his nose herein complained

of. Defendant also claims this record for its showing that morphine was there administered plaintiff, and that plaintiff demanded more, as a basis for a claim that plaintiff's symptoms of brain injury came really from the use of narcotics. The evidence would appear to be admissible for the purpose, and its weight to be only ground for attack after admission; although the inference from this evidence, without other supporting proof, is perhaps too limited to justify reversal on this ground alone.

Plaintiff now argues that at least certain (unspecified) portions of these records were not properly admissible, although somewhat inconsistently he objects to the second Stapleton record because it is only a part of the entire hospital record. It is sufficient to say as to this that had defendant once been able to surmount the objection as to identification, details as to the portions of the records to be received could easily have been settled in the court's discretion at the time of the offer and upon consideration of a specific objection. Defendant's counsel made clear the purpose for which he offered the records. Whether in the light of such purpose some parts of this evidence should be omitted is preëminently a matter of adjustment as a trial proceeds, and as to which precise directions from us could hardly be helpful.

Defendant also complains that its cross-examination of opposing witnesses was unduly limited. We think in view of the issues presented that a reasonably wide latitude was justified and cite one instance where we think the restriction prejudicial. The doctor who attended the plaintiff on his second admission to the Stapleton Hospital testified that he observed a post nasal drip produced by a deviated nasal septum, which he attributed to the nose fracture described to him by the plaintiff as resulting from the accident in suit. Upon cross-examination, defendant attempted to discover whether or not the doctor would have reached the same conclusion had he known of a deviation of the nasal septum disclosed by an abstract of the Galveston record which counsel produced. The court stopped this examination, stating that defendant must proceed with its own doctor or subpoena the record of the hospital authorities to prove the facts. Counsel pointed out that he had subpoenaed the Galveston records and expected to receive them shortly, to which the court replied, "That is too bad. I am sorry." Plaintiff now supports the ruling on the ground that the paper could not be used, since it was but an abstract of the record—a position somewhat inconsistent with his objection noted above to the use of the full hospital records. But the abstract was nowhere offered in evidence; it was used only as ground for asking the doctor a pertinent question. Counsel was entitled to test the doctor's conclusion by challenging his premises; the only obligation was not to mislead by suggesting facts which actually did not exist. Dilleber v. Home Life Ins. Co., 87 N.Y. 79, 83; Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; 3 Wigmore on Evidence, §§ 780, 992, 994. The abstract was thoroughly supported by the full record when the latter was later presented. It was an adequate guaranty of counsel's good faith in asking the question.

The judgment is reversed and a new trial is ordered.