## MASTERSON v. PENNSYLVANIA R. CO.

### No. 9938.

United States Court of Appeals
Third Circuit.

Argued Nov. 11, 1949.

Reargued May 1, 1950.

Decided June 14, 1950.

794

Philip Price, Philadelphia, Pa. (Owen B. Rhoads, Robert M. Landis, Barnes, Dechert, Price, Myers & Clark, all of Philadelphia, Pa., on the brief), for appellant.

Joseph S. Lord, 3d, Philadelphia, Pa. (Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellee.

. Before MARIS, GOODRICH and HASTIE, Circuit Judges.

· MARIS, Circuit Judge.

The plaintiff, Christ H. Masterson, sued his employer, the Pennsylvania Railroad Company, in the United States District Court for the Eastern District of Pennsylvania, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for injuries which he sustained when an automobile which he was driving swerved from

the highway and crashed into a guard rail near Flinton, Pennsylvania. At the trial the railroad requested a directed verdict in its favor which the trial judge refused. The jury rendered a verdict in favor of the plaintiff upon which judgment was entered. Motions for judgment n. o. v. and for a new trial were denied and the railroad brought the case here on appeal.

■ The railroad's first contention is that there was no evidence upon which the jury could predicate a finding of negligence on its part and that, therefore, its motion for a directed verdict should have been granted. In passing upon this contention we must, of course, consider the evidence in the light most favorable to the plaintiff. So viewed the evidence tended to establish the following facts:

The plaintiff was one of a number of coal inspectors employed by the railroad. His duties required him to travel over the entire eastern soft coal region of the United States inspecting mines that supplied coal to the railroad. It was the regular practice of the coal inspectors to use at their own discretion whatever transportation to the mines was available, such as trains, taxicabs or rented automobiles, and to pay the cost of such transportation for which they were later reimbursed by the company.

The plaintiff followed this procedure everywhere but in Altoona, Pennsylvania. There for a period of time before the war he had used his own automobile. Thereafter he was issued a special wartime government permit authorizing him to use taxicabs, and everywhere but in Altoona he continued to use that permit to hire taxicabs. Some time before the date of the accident, however, the plaintiff stopped using taxicabs in Altoona and began the practice of renting automobiles from the Altoona Drive Yourself Company, an automobile rental agency operated by F. B. Close. The plaintiff testified that he was told to do so by his foreman, W. L. Lloyd. The Drive Yourself Company was not owned by or affiliated with the railroad but there was a standing arrangement or contract between the two under which the Drive Yourself Company was to furnish automobiles from time to time for use by employees of the defendant.

On the morning of June 25, 1945 the plaintiff obtained a green Chevrolet automobile from the Drive Yourself Company to drive from Altoona to Houtzdale, Pennsylvania, to make an inspection of a mine at that place. He had previously driven this same automobile and had noticed its tendency to swerve to the right, which condition he had reported to both Close and Lloyd, telling the latter that the car was dangerous to drive. Lloyd had stated, however, that it was the only car the Drive Yourself Company had available and that plaintiff would have to use it. The plaintiff accordingly took the car, drove to Houtzdale in it and made his inspection. On returning from Houtzdale to Altoona, as he entered a curve in the highway at a speed of about thirty-five or forty miles per hour, the automobile started to swerve to the right and in spite of the plaintiff's efforts it pulled itself out of his control, went off the road to the right, and crashed into the guard rail. It was for a fracture of the sixth cervical vertebra alleged to have been suffered in this accident that the plaintiff brought the present suit.

■ The railroad asserts that the facts as we have recited them are not sufficient to establish negligence on its part. We do not agree. This is not a case in which the employee was wholly free to choose his own means of proceeding to and from the place at which he was to perform his duties. On the contrary he had been directed by his employer to use for that purpose a particular means, namely, an automobile to be obtained from the Drive Yourself Company, with which concern the employer had a standing arrangement to provide just such facilities for the use of its employees. In the present case, however, we do not have to decide whether even under these circumstances the employer would have been liable to its employee for injuries resulting from a defective automobile thus obtained in the absence of knowledge on its part of the defect. For the evidence of the plaintiff indicates that the railroad through its foreman, Lloyd, had actual no-

tice of the defective condition of the automobile in question and nonetheless directed the plaintiff to use it. We think that there can be no doubt that the jury was justified from this evidence in finding that the railroad was guilty of negligence which was the proximate cause of the accident in which the plaintiff suffered the injuries he alleged. It follows that the trial judge did not err in refusing to direct a verdict for the defendant.

We turn then to certain alleged trial errors which the railroad contends call for a new trial. The first of these involves the admission into evidence of copies of two letters to the railroad's chief medical examiner, one purporting to be signed by Dr. A. E. Colcher and the other by Dr. R. C. Kell. The copies had been annexed by the railroad to its answer to an interrogatory filed by the plaintiff. Each letter indicated that the plaintiff had been examined by the writer and stated certain facts with respect to his history and condition together with the writer's findings or conclusions. Over the objection of the railroad the copies of the letters were admitted into evidence as memoranda made in the regular course of business. Their admission is sought to be justified under the Federal Business Records Act or the Uniform Business Records as Evidence Act, which is in force in Pennsylvania. If admissible under either act, their admission was not error. Federal Civil Procedure Rule 43(a), 28 U.S.C.A.

The Federal Business Records Act, 28 U.S.C.A. § 1732, provides that: "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter."

The provisions of the Uniform Business Records as Evidence Act, 28 P.S.Pa. § 91b, are that: "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

■ We think that these letters were not admissible under either statute. Obviously they were not business records of the railroad since they were addressed to it. See Palmer v. Hoffman, 1943, 318 U.S. 109, 114, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719. Nor were they in form original business records of the physicians who wrote them since they were actually merely copies of letters purporting to have been written by those physicians to the railroad's chief medical examiner. Moreover they were not confined to a record of objective acts, conditions, transactions, occurrences or events which took place at or near the time of recording, as the statutes require. For in addition to statements of the observed condition of the plaintiff they contain many facts relating to his prior history, apparently given by him to the writers, as well as the writers' subjective findings and conclusions. The cited statutes clearly do not authorize the admission of unsworn statements, such as these, made by a physician to a third party giving his opinion as to the condition of a patient whom he has examined.[1] It is incumbent upon a party who desires to put such an opinion in evidence to call the physician as a wit-

1. Vicksburg & Meridian R. Co. v. O'Brien, 1886, 119 U.S. 99, 102, 7 S.Ct. 172, 30 L. Ed. 299; New York Life Ins. Co. v. Bullock, D.C.S.D.Fla.1932, 59 F.2d 747, 748; Metropolitan Life Ins. Co. v. Bradbury, 1937, 179 Okl. 253, 65 P.2d 433; Kendall v. Travelers Ins. Co., D.C.N.D. W.Va.1942, 45 F.Supp. 956, 957; Baltimore & O. R. Co. v. Zapf, Md.1949, 64 A.2d 139, 142–143, 6 A.L.R.2d 400; Annotation 6 A.L.R.2d 406.

ness at the trial or take his deposition if otherwise permissible.

■ Moreover even if the originals of the two letters in question had been offered in evidence and could be regarded as writings made in the regular course of professional business they were not identified as having been so made by or under the direction of the physicians who purported to sign them. Indeed in the case of Dr. Colcher there was evidence that he had not written or signed the letter purporting to have been signed by him. Obviously a writing is not admissible under the Business Records Acts merely because it may appear upon its face to be a writing made by a physician in the regular course of his practice. It must first be shown that the writing was actually made by or under the direction of the physician at or near the time of his examination of the individual in question and also that it was his custom in the regular course of his professional practice to make such a record. This is the requirement of the Federal Business Records Act. Palmer v. Hoffman, 1943, 318 U.S. 109, 115, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719; Ulm v. Moore-McCormack Lines, 2 Cir., 1940, 115 F.2d 492, rehearing denied 117 F.2d 222, certiorari denied 313 U.S. 567, 61 S.Ct. 941, 85 L.Ed. 1525. It is likewise a requirement of the Uniform Business Records as Evidence Act. Freedman v. Mutual Life Ins. Co. of New York, 1941, 342 Pa. 404, 21 A.2d 81, 135 A.L.R. 1249.

In the present case there is no evidence whatever that the two letters in question were writings made in the regular course of business in the sense that it was the regular practice of the physicians who signed them to write such letters or that they were written contemporaneously with the examinations of the plaintiff to which they referred. Indeed, in the case of Dr. Colcher there was, as we have said, evidence to the contrary. The plaintiff urges, however, that since they were produced by the railroad in connection with its sworn answers to his interrogatories they were sufficiently authenticated. We think that this is a non sequitur. The railroad had been asked by the plaintiff whether it had at any time received any medical or X-ray reports from any hospital or physician reporting on the injuries sustained by the plaintiff. Its answer was : "Yes. Copies of . . . a letter of Doctor R. C. Kell, a letter of Doctor A. E. Colcher . . . are attached." This at the most was an admission by the defendant that the two physicians in question had written the letters. It certainly was not a representation or admission that the contents of the letters comprised, or were taken from, contemporaneous professional records made by the writers in the course of their professional practice. Much less was it an admission of the truth of the statements contained in the letters. For there was no evidence that these physicians were employees or agents of the railroad whose statements would be binding upon it.

Actually these letters appear to have been written not as normal or routine records of medical observation or treatment, but rather as aids in resolving a controversy about legal responsibility. "Their primary utility is in litigating, not in railroading" [2] or in healing. To admit them would be to bring "the business of preparing cases for trial" [3] within the purview of the Federal Business Records Act.

■ The plaintiff strongly urges that even if the admission of the letters of Dr. Colcher and Dr. Kell was erroneous the error was harmless in that the statements contained in the letters were merely cumulative of other evidence. After careful examination of the record we are constrained to agree with this contention. The record discloses ample evidence to support the conclusion that the plaintiff had suffered a fracture of the sixth cervical vertebra, the conclusion stated in the letters of Dr. Colcher and Dr. Kell. Moreover while the two medical witnesses for the railroad who appeared at the trial both testified that no

2. Palmer v. Hoffman, 1943, 318 U.S. 109, 114, 63 S.Ct. 477, 481, 87 L.Ed. 645, 144 A.L.R. 719.

3. Palmer v. Hoffman, ibid.

such fracture was shown by the X-ray films a third physician, Dr. Gerald D. Bliss, who had been consulted by the railroad, testified in depositions which were offered in evidence that his examination of the films did reveal a fracture of the vertebra in question and that he had reported that conclusion to the railroad.

With such testimony before the jury we are not persuaded that the letters of Dr. Colcher and Dr. Kell could have had significant effect upon the jury's verdict. This is particularly clear in the case of Dr. Kell's letter since one of the statements therein as to the fracture is a reference to the findings of Dr. Bliss upon that point and, as we have said, the direct testimony of the latter with respect to his findings was before the jury. Moreover the effect of Dr. Colcher's letter must have been neutralized by a subsequent letter from him which was offered in evidence in which he stated that the earlier letter had not been written by him but by a substitute in his office during his absence and that he himself had found no evidence of any fracture. We conclude that the error of the trial judge in admitting the letters in question did not affect the substantial rights of the railroad.

The railroad also asserts that the trial judge erred in permitting the plaintiff to offer in evidence certain of its answers to interrogatories propounded by the plaintiff without requiring him to put in evidence at the same time other relevant answers. These latter answers were, however, put in evidence later during the course of the trial and we find no substantial error here. Finally the railroad contends that the trial judge erred in his charge to the jury. We have considered this contention but find it to be without merit.

The judgment of the district court will be affirmed.

---

GOODRICH, Circuit Judge, Concurring.

While I agree with the result reached in this case, I am not at all certain that I go along with the interpretation of the federal statute having to do with admissibility of records. I think the decisions on this statute show a tendency to confine it too narrowly. The interpretation of the statute is not necessary in this case because we all agree that the admission of the documents was not prejudicial error.