**Samuel S. SCHWARTZ**

v.

**Evangelo KOUTSOUBO.**

**Civ. A. No. 70–2675.**

United States District Court,
E. D. Pennsylvania.

July 21, 1972.

Stephen G. Fox, Philadelphia, Pa., for plaintiff.

C. Dean Francis, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiff seeks a new trial following trial of an automobile accident case in which the jury returned a verdict in favor of the defendant.

On March 14, 1970, plaintiff was driving his automobile south on Fourth Street, Philadelphia, Pennsylvania. Fourth Street is a one-way street with a single set of trolley tracks in the center and room enough for a lane for automobiles on each side. The site of the accident was the southernmost of two driveways leading from a plywood center situate on the west (right hand) side of the street. As plaintiff passed the driveway, he felt a bump on the right side of his car at about the middle. Plaintiff brought his vehicle to a stop beyond the point of impact. There was damage at the right side of plaintiff's vehicle at about the side doors. Defendant's vehicle, immediately after the incident, was in the driveway, facing the street, partially on the sidewalk and partially in the street. Defendant's vehicle was damaged at the left front bumper. Plaintiff testified that he had not seen defendant's vehicle at any time before feeling the impact. He did not know what had happened. After he brought his vehicle to a stop, he said that he looked back and saw defendant emerging from the driver's side of defendant's vehicle. To bolster his case on liability, plaintiff called defendant as on cross-examination in his own case, but defendant's testimony, to say the least, was not helpful to plaintiff's cause. Defendant testified that his car was parked in the driveway. He had made a purchase of plywood and was at the rear of his vehicle tying the plywood onto the roof when he heard the impact. Defendant testified that his vehicle had not moved at any time during the incident. He also testified that he called after plaintiff and finally succeeded in getting him to bring his vehicle to a stop.

■ Plaintiff attempted to place in evidence a police report which contained, in a section headed "Describe What Happened," the notation:

"Veh. # 2 going south on 4th St. Veh. # 1 pulling out of driveway struck Veh. # 2."

When the police officer who prepared the report was questioned, he testified that he had no recollection of the events surrounding the making of the report, and that he had no recollection whatsoever as to whose version of the accident the notation purported to record. Plaintiff offered to establish, by proposed questioning of the police officer, that it was the officer's usual procedure to ask each party to an accident his version of the accident; that if their versions differed, he would put the different versions in the report and if they did not differ, he would put just one version in the report. It was plaintiff's counsel's avowed intention to have the report in evidence as an admission by the defendant that he had driven his vehicle out of the driveway into the side of plaintiff's vehicle. The offer was refused.

The refusal to accept the police report in evidence is one of several trial errors asserted as grounds for new trial. The police report was clearly not admissible for the purpose for which plaintiff sought to introduce it. See Haas, Appellant v. Kasnot, 371 Pa. 580, 92 A.2d 171 (1952). The questioning of the police officer demonstrated the complete unreliability of his report as a basis for establishing an alleged admission by the defendant as to how the accident had happened.

■ Plaintiff also contends that the verdict of the jury was against the weight of the evidence. The argument on this point concedes that there were two versions of the accident, plaintiff's and defendant's. Plaintiff's version was that defendant drove his vehicle out of the driveway into the side of plaintiff's car. This version was "unwitnessed" in that no one, not even plaintiff, saw defendant's vehicle move at any time. This version of the accident was and is advanced solely from the circumstantial evidence relating to the points of dam-

age to the two vehicles, i. e. the right side doors of plaintiff's, and the left front bumper of defendant's. Defendant's version was that presented by defendant's testimony as part of plaintiff's case. Defendant testified that his car was parked, that he was out of it when the impact occurred and that it had not moved while so parked. The conflicting versions clearly presented an issue of credibility for the jury. There was ample basis for the jury's acceptance of defendant's version. It certainly could not be said that the jury's verdict was against the weight of the evidence. Plaintiff's brief in this regard does nothing more than rehash his jury speech, and is no more persuasive with the court than it apparently was with the jury.

▮▮▮▮▮ From the evidence, the court suggested to the jury another possible version, i. e. that if the jury accepted defendant's testimony, the jury might find that a portion of defendant's vehicle extended beyond the line of parked cars and, if it did, the jury might find defendant negligent if his protruding vehicle represented a hazard to moving traffic. The court also instructed the jury that if the vehicle protruded in such a way that it should have been seen by plaintiff in the exercise of reasonable care, it might find plaintiff guilty of contributory negligence. Plaintiff argues that it was error for the court to so instruct the jury since that version could only be arrived at by speculation and, if accepted by the jury, would "necessarily" result in a finding that plaintiff was contributorily negligent. At the outset, it should be noted, as has been said often, that "a federal judge is not a mere arbitrator who rules upon objections and instructs the jury." Kornicki v. Calmar Steamship Corp. [Jarka Corp. of Philadelphia], 460 F.2d 1134 (3d Cir. May 19, 1972), citing Cromling v. Pittsburgh & L. E. R. Co., 327 F.2d 142 (3d Cir. 1963). He has an obligation to present to the jury all issues

fairly presented by the evidence, whether argued by counsel or not. The complained of "version" of the accident thus submitted by the court to the jury was, in my view, a reasonable one under the evidence and, if accepted by the jury, it would not "necessarily", as plaintiff suggests, result in a finding of contributory negligence. A jury could very easily have found that, although a vehicle parked as defendant's was presented a danger to passing traffic, it would not necessarily have been observable by an operator of a moving vehicle exercising reasonable care.

▮▮▮ The remainder of plaintiff's complaints represent, in the main, the dissatisfaction of plaintiff's counsel with the court's handling of its trial calendar and its manner of conducting trials. One of the complaints involved the court's ruling limiting counsel to five minutes to make his opening statement to the jury. Another concerned the court's policy not to delay trial to wait for a medical witness.

In a way, one can sympathize with plaintiff's counsel that the courts no longer indulge the luxury of permitting attorneys to conduct trials at a time and at a pace that suits them and affords them opportunity to present their clients' cases in the very best possible light. But delay in the courts has evoked so much adverse comment and criticism that the courts have had to react by being more efficient in the scheduling and in the conduct of the courts' business. One of the recurring sources of delay in trials is the scheduling of medical witnesses. Understandably, busy doctors cannot be available at the beck and call of lawyers and courts. They can't "drop everything" and come running when their testimony is needed. Because of that, the practice has developed in many courts (including this one) to take doctors "out of turn", i. e. to take them at any point during the trial when they can appear. In other courts there has been experimentation with video tape presentation of doctors' testimony. Under this procedure, the

doctors' testimony is taken and recorded on video tape at a time convenient to him in advance of trial, and the video tape is played during the trial. The latter procedure has not as yet been used to any extent in this district.

Recognizing that there may be occasions when busy medical practitioners cannot be available at *any* time during the trial and to avoid delay and loss of valuable courtroom and juror time, it has been this court's practice, over a period of years, to advise counsel to be prepared with their medical witnesses' trial depositions in the event they are unable to appear at the trial. (See F. R.Civ.P. 26(d) (4)). That advice (and warning) was given in this case, as counsel has acknowledged in his brief. Indeed, arrangements were made for the taking of plaintiff's medical witness' testimony, but plaintiff's counsel cancelled the deposition because he preferred to have the doctor's "live" testimony. To accomplish this "counsel for plaintiff then decided to subpoena the medical witness, although this practice was virtually unheard of in Philadelphia County, and present the Court with the alternative of either issuing an attachment for the medical witness or briefly delaying the trial to accommodate the schedule of the witness." (Plaintiff's brief, unnumbered 23rd page).

Counsel for plaintiff cites this as an example of the court's "anger and hostility" toward him. The fact of the matter is that plaintiff's medical witness *did* appear at the trial and testify (apparently without the compulsion of a subpoena) whereas, curiously enough, by the application of the same practice and as a result of the same advice and warning, *defendant's* medical witness was unable to appear without delaying the trial and *defendant* had to forego presentation of medical testimony because he had failed to take his doctor's trial deposition.

It would unduly prolong an already too long opinion in this uncomplicated and unremarkable automobile accident case to answer all of counsel's charges. It is regrettable, indeed, that plaintiff's counsel has apparently taken as a personal affront and as evidence of the court's anger and displeasure every ruling which, in counsel's view, was harmful to his case. Plaintiff's case was lost because the evidence was weak. Loss of a case does not require that counsel beat his breast and cry "mea culpa," nor does it require that he point his finger at the court and say "tua culpa."

The motion for new trial will be denied.